**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **Brady Bennett,** *individually, and on behalf of all others similarly situated* <br><br> Plaintiff, <br><br> v. <br><br> **Association of Health Care Management, Inc.,** <br><br> Defendant. | **Civil Action No. 4:22-cv-04449** <br><br> **Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiff, **Brady Bennett** ("Bennett" or "Plaintiff"), individually, and on behalf of all other similarly situated, allege the following against **Association of Health Care Management, Inc.** ("AHCMI" or "Defendant"):

### BACKGROUND

1. In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing phone calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

2. The TCPA affords special protections for people who register their cell phone numbers on the National Do Not Call Registry. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after being registered on the National Do Not Call Registry is entitled to recover a penalty of $500 per call, and potentially

$1,500 per call if the calling party is determined to have willfully violated the TCPA. *See* 47 U.S.C. § 227(c) *et seq.*

3. From January 2022 until October 2022 alone, approximately 36.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com (last visited October 18, 2022). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, The Wall Street Journal, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

4. Plaintiff Brady Bennett brings this case to protect the privacy rights of himself and a class of similarly situated people who were improperly called on their cell phones by AHCMI despite registering their numbers on the National Do Not Call Registry.

5. Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq.*

**JURISDICTION AND VENUE**

6. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See <u>Mims v. Arrow Fin. Servs., LLC</u>, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

7. This Court has personal jurisdiction over Defendant as Defendant maintains its principal place of business in Houston, Texas.

8. Plaintiff is also a resident of Texas and received the offending telemarketing calls while present in his home state of Texas.

9. Because AHCMI is headquartered and based in this District, venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

**PARTIES**

10. Bennett is a natural person residing in Cedar Park, Texas 78613.

11. Bennett is a "person" as that term is defined by 47 U.S.C. § 153(39).

12. AHCMI is a business entity with principal place of business, head office, or otherwise valid mailing address at 11111 Richmond Avenue, Suite 200, Houston, Texas 77082.

13. AHCMI is a "person" as that term is defined by 47 U.S.C. § 153(39).

14. AHCMI acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

**FACTS PERTAINING TO BRADY BENNETT**

15. At all times relevant hereto, Bennett owned a cellular telephone with the number (512) XXX-5325.

16. Bennett registered his cell phone with the Do Not Call Registry in November, 2008 in order to obtain solitude from unwanted telemarketing calls.

17. Plaintiff never provided express written consent, or any consent, to receive calls from Defendant.

18. Nonetheless, Defendant called Plaintiff on his cell phone number at least 17 times in 2020 for solicitation purposes including, but not limited to the instances identified below:

| Date and Time of Call | Calling Party's Number Reflected on Caller ID |
|---|---|
| March 16, 2020 at 10:34 AM | 985-314-3556 |
| March 25, 2020 at 4:02 PM | 262-295-6392 |
| April 7, 2020 at 9:21 AM | 256-371-8998 |
| May 5, 2020 at 2:27 PM | 706-388-3727 |
| May 7, 2020 at 2:31 PM | 920-283-2378 |
| May 8, 2020 at 3:02 PM | 757-260-3818 |
| May 13, 2020 at 2:57 PM | 380-235-0569 |
| May 15, 2020 at 11:44 AM | 860-238-3446 |
| May 18, 2020 at 2:37 PM | 562-378-5767 |
| May 19, 2020 at 1:29 PM | 458-757-4911 |
| May 20, 2020 at 10:32 AM | 424-323-4336 |
| May 22, 2020 at 3:46 PM | 601-419-9622 |
| May 27, 2020 at 3:27 PM | 248-653-5344 |
| May 28, 2020 at 4:18 PM | 267-352-9242 |
| May 29, 2020 at 9:49 AM | 563-287-3182 |
| June 5, 2020 at 9:47 AM | 513-496-3943 |
| June 15, 2020 at 4:05 PM | 240-915-6224 |

19. During each of the aforementioned calls that Plaintiff answered, the following prerecorded message played:

"Hello, This is Healthcare Central. We looked through our records and noticed you submitted a request in the past for some information regarding more affordable health insurance policy. This is a follow up and we would love to hop on a call to see if we can discuss some options."

20. The pre-recorded message then listed either 844-989-1702 or 833-551-0677 as call back number.

21. The calls were irritating and disruptive to Bennett who had no interest in healthcare plans, as he had health insurance at all relevant times.

22. After receiving several identical calls, on May 22, 2020, Plaintiff finally stayed on the line and the call was transferred to a live agent. Bennett then engaged with Defendant, to learn the identity of the company placing solicitation calls without consent.

23. In that May 22, 2020 call, Plaintiff spoke with "Gregory Mason" who tried to sell Plaintiff health insurance options, but initially would not disclose the true name of the company on whose behalf he was calling.[1]

24. In furtherance of his investigative endeavors, Plaintiff then provided his email address. Almost immediately thereafter, Bennett received an email from memberservices@ahcminc.com, which included in the body of the email the language "American Health Care Management, Inc is a licensed TPA…"

25. While still on the line, Bennett confirmed AHCMI was the party which sent that email.

26. Because of the common pattern, syntax, and language of the message that played at the beginning of each call with the May 22, 2020 call which led to the above exchange, Bennett understood it AHCMI that placed the aforementioned offending calls to him.

---

[1] Plaintiff correctly inferred "Healthcare Central" was a generic alias rather than a true corporate name.

- 5 -

27. Bennett read the email while on the phone with AHCMI's representative during the May 22, 2022 call. During that call, once Plaintiff was able to determine the calling party's corporate identity, he immediately advised the caller he was no longer interested in purchasing its plan.

28. Bennett demanded that the unwanted calls cease on several occasions, yet the telemarketing calls from Defendant continued. Specifically, during the call on June 5, 2020, Plaintiff pressed 2 per the instructions from pre recorded message to be put on Defendant's internal Do Not Call list, however, he was again contacted on June 15th, 2020.

29. Prior to the aforementioned campaign, Bennett had never consented to calls from AHCMI or established any business relationship with AHCMI. In fact, Bennett had the same health insurance through his job for years, and therefore had no need for health insurance.

30. In the fall of 2022, two years after the aforementioned telemarketing campaign, for reasons unknown, AHCMI again commenced a new telemarketing campaign to Mr. Bennett.

31. Unlike the 2020 campaign, the calls from AHCMI in 2022 appear to have featured live representatives on the line when Bennett answered, rather than playing pre-recorded messages.[2]

32. The 2022 live-agent calls were made on the following instances:

| Date and Time of Call | Calling Party's Number Reflected on Bennett's Caller ID |
|---|---|
| September 22, 2022 at 4:35 pm | 631-248-3934 |
| September 28, 2022 at 4:35 pm | 331-261-6382 |
| October 20, 2022 at 2:26 pm | 605-307-7015 |
| October 25, 2022 at 11:21 am | 339-330-1501 |

---

[2] Plaintiff clarifies this distinction as his 227(b)(1) claim is only asserted for the 2020 calls.

| | |
|---|---|
| October 26, 2022 at 11:01 am | 657-225-1600 |
| November 1, 2022 at 2:20 pm | 276-246-5109 |
| November 1, 2022 at 1:25 pm | 224-252-9979 |
| November 11, 2022 at 10:43 am | Could not identify |
| November 16, 2022 at 12:08 pm | 219-351-1157 |
| December 1, 2022 at 4:34 pm | 580-257-6982 |
| December 2, 2020 at 9:20 am | 254-324-4663 |
| December 2, 2020 at 9:55 am | 341-234-8823 |
| May 27, 2020 at 3:27 PM | 248-653-5344 |
| May 28, 2020 at 4:18 PM | 267-352-9242 |
| May 29, 2020 at 9:49 AM | 563-287-3182 |

33. Because the calls were continuing around the time this Complaint was filed, it is likely violations will continue to accrue after the filing of this Complaint.

34. Defendant's calls were not made for "emergency purposes" or to convey healthcare information.

35. Once Defendant was informed that its calls were unwanted and to stop, there was no lawful purpose to making further calls, nor was there any good faith reason to place calls.

36. Defendant knew its calls were unwanted, therefore, all calls were made with reckless disregard for Plaintiff's rights.

37. Defendant's incessant calls were bothersome, disruptive and frustrating for Plaintiff to endure.

38. AHCMI's call intruded upon the rights of Bennett and the putative class members to be free from invasion of their interest in seclusion.

39. AHCMI's conduct caused Bennett and the putative class members to waste time addressing and/or otherwise responding to the unwanted calls.

**Class Allegations**

40. Pursuant to Fed. R. Civ. P. 23, Bennett brings this lawsuit as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

41. Bennett seeks to represent the following classes:

> **Prerecorded Voice Class:** All persons with cell phones during the time period from four years prior to the filing of this action until the date a class is certified, to whom AHCMI or someone acting on its behalf placed a prerecorded voice call. Excluded from the class are all persons who were current or former ACHM customers at the time they received such calls.

> **Do Not Call Registry Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States who: (1) received more than one telephone call or text message from AHCMI (or someone acting on its behalf) during a 12-month period; and, (2) were registered on the Do Not Call Registry for more than 31 days at the time the calls were received.

42. Bennett reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

43. The members of the proposed classes are so numerous that joinder of all members is impracticable. Bennett reasonably believes that hundreds or thousands of people have been harmed by AHCMI's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to AHCMI.

44. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

45. On information and belief, AHCMI has called and continues to call people who are registered on the National Do Not Call Registry. It is reasonable to expect that AHCMI will continue to make such calls absent this lawsuit.

46. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to, whether AHCMI called cell phone numbers that were registered on the Do Not Call Registry, and whether such calls violate the TCPA.

47. Bennett's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

48. Bennett and his counsel will fairly and adequately protect the interests of the members of the proposed class. Bennett's interests do not conflict with the interests of the proposed class he seeks to represent. Bennett has retained lawyers who are competent and experienced in class action, TCPA litigation and consumer law. Bennett's counsel has the resources to litigate this class action, and Bennett and counsel are aware of their responsibilities to the putative members of the class and will discharge those duties. Bennett reserves the right to join other unnamed class members into this lawsuit.

49. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the

individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

50. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

51. Questions of law and fact, particularly the propriety of calling cell phone numbers registered on the National Do Not Call Registry, predominate over questions affecting only individual members.

52. AHCMI has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

**COUNT I**
**DEFENDANT VIOLATED THE TCPA 47 U.S.C. §227(b)(1)**

53. Bennett incorporates the forgoing paragraphs as though the same were set forth at length herein.

54. The TCPA states, in part:

> It shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using [a] prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . .

47 U.S.C. § 227(b)(1).

55. The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. § 227(a)(4).

56. The Federal Communications Commission's regulations implementing the TCPA provide that telephone solicitations cannot be made to a recipient without the recipient's "prior express written consent." *See* FCC 12-21, CG Docket 02-278 (effective October 16, 2013); 47 C.F.R. § 64.1200(a)(2).

57. The term "prior express written consent" as defined by the Code of Federal Regulations means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)(i).

58. By placing prerecorded voice calls to the cell phones of Bennett and the putative class members without first obtaining their prior express written consent, AHCMI violated the TCPA, including, but not limited to 47 U.S.C. § 227(b)(1).

59. The TCPA provides for a private right of action and statutory damages of $500 per violation, and up to $1,500.00 if the violation is determined to be willful. 47 U.S.C. § 227(b)(3).

60. On information and belief, AHCMI placed phone calls which utilized a pre-recorded message, to the cell phones of Bennett[3] and the putative class members without the recipients' prior express written consent.

61. On information and belief, AHCMI placed prerecorded voice calls to hundreds if not thousands of wireless telephone numbers.

**Demand for Judgment**

WHEREFORE Plaintiff Brady Bennett, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Association of Healthcare Management, Inc., pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Bennett as the class representative;
b. Enter an order appointing Kimmel & Silverman, P.C. as class counsel;
c. Enter judgment in favor of Bennett and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if AHCMI willfully violated section 227(c)(5) of the TCPA;
d. Enter judgment in favor of Bennett and the class members AHCMI enjoining AHCMI from placing calls or leaving messages utilizing an automatically generated or pre-recorded voice;
e. Award Bennett and the class all expenses of this action, and requiring defendant to pay the costs and expenses of class notice and claims administration;
f. Award Bennett and the class members all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees; and,
g. Award Bennett and the class members such further and other relief the Court deems just and appropriate.

**COUNT II**
**DEFENDANT VIOLATED THE TCPA 47 U.S.C. § 227(c)(5)**

---

[3] Upon information and belief, as it related to Bennett, this claim only pertains to the 2020 calls, and not the 2022 calls, which sounded as though they featured live agents only.

62. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

63. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one call on their cell phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

64. The penalty for each call placed in violation of the TCPA's restrictions on calling cell phone numbers registered on the National Do Not Call Registry is $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

65. In addition, the TCPA allows the Court to enjoin AHCMI's violations of the TCPA's regulations prohibiting calls to cell phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

66. By making calls to the cell phones of Bennett and the putative class members after their numbers were registered on the National Do Not Call Registry, AHCMI violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

67. AHCMI knew or should have known that Bennett and the putative class members had their numbers registered on the Do Not Call Registry.

68. Bennett and the putative class members are entitled to damages of $500.00 per violation for each call made by AHCMI and up to $1,500.00 per violation if the Court finds that AHCMI willfully violated the TCPA.

**Demand for Judgment**

WHEREFORE Plaintiff Brady Bennett, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant Association Healthcare Management, Inc., pursuant to Federal Rule of Civil Procedure 23 *et seq.*, certifying this action as a class action and appointing Bennett as the class representative;
b. Enter an order appointing Kimmel & Silverman as counsel for the class;
c. Enter judgment in favor of Bennett and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if AHCMI willfully violated section 227(c)(5) of the TCPA;
d. Enter a judgment in favor of Bennett and the putative class that enjoins AHCMI from violating the TCPA's regulations prohibiting AHCMI from calling numbers registered on the National Do Not Call Registry;
e. Award Bennett and the class all expenses of this action, and requiring AHCMI to pay the costs and expenses of class notice and administration; and,
f. Award Bennett and the class such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

**Please take notice** that Plaintiff, **Brady Bennett**, demands a jury trial in this case.

Respectfully submitted,

Dated: December 21, 2022

By: */s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002
Phone: (215) 540-8888 ext. 104
Facsimile: (877) 788-2864

- 15 -

Email: jginsburg@creditlaw.com